[No. 16062. Department One. January 8, 1921.]

WILLIAM MURPHY, *Respondent,* v. FIDELITY ABSTRACT AND TITLE COMPANY, *Appellant.*[1]

ABSTRACTS OF TITLE (2)—REQUISITES—PRIVITY. There is sufficient privity of contract to render an abstract company liable to plaintiff for an untrue statement in an abstract furnished at the request of plaintiff's attorneys, although the agency was not disclosed, or the purpose of the abstract stated.

SAME (2) — RIGHTS, DUTIES AND LIABILITIES OF EXAMINERS OF TITLES. An abstracter is not warranted in reporting that an assessment lien was paid in full, where the county treasurer did not receive the amount of the assessment in payment of the tax, but only as the purchase price of the county's lien upon transfer of a certificate of delinquency.

SAME. The fact that a certificate of delinquency was not filed in the auditor's office does not warrant an abstracter in stating in the abstract that the assessment was paid in full.

DAMAGES (26)—MITIGATION AND REDUCTION OF LOSS — DUTY TO COMPROMISE. In an action to quiet title to land held by plaintiff under a tax title, plaintiff's offer to release his interest upon defendant's payment of $450, does not require the defendant to pay that sum and thereby mitigate his damages from the loss of the land, which was worth more than twice that amount, in order to recover his loss from an abstracter liable to defendant therefor on account of an untrue statement in the abstract.

[1]Reported in 194 Pac. 591.

SAME. In an action against an abstracter for damages on account of an untrue statement in the abstract, defendant cannot plead, in mitigation of damages, that plaintiff could have compromised the claim by paying $450, and failed to give defendant an opportunity to pay the same, where it appears that defendant would have unhesitatingly refused to make such payment.

SAME (30) — GROUNDS OF COMPENSATORY DAMAGES — ATTORNEY'S FEES. In an action against an abstracter for making an untrue statement, resulting in the loss of the land, plaintiff may recover reasonable attorney's fees and expenses in defending a suit brought against him to quiet title, where he was fully warranted in defending the suit.

Appeal from a judgment of the superior court for Yakima county, Taylor, J., entered November 4, 1919, upon findings in favor of plaintiff, in an action on contract, tried to the court. Affirmed.

*Stephen E. Chaffee* and *O. L. Boose,* for appellant.
*Lee & Kimball* and *Delle & Delle,* for respondent.

PARKER, J.—This is an action for damages claimed by the plaintiff, Murphy, as a result of an untrue statement negligently made by the defendant abstract company in an abstract of title prepared by it for him, that an irrigation assessment lien upon a tract of land in Yakima county was paid, upon which land he had a mortgage. A trial upon the merits in the superior court for that county, sitting without a jury, resulted in findings and judgment in favor of the plaintiff, from which the defendant has appealed to this court.

The facts of the case are not in dispute, except as to the question of the amount of the damages suffered by respondent, Murphy, and may be summarized as follows: In May, 1914, the then owner of the land in question executed and delivered to respondent a mortgage upon the land to secure an indebtedness owing by him to respondent. The debt so secured having ma-

tured and remained unpaid so as to entitle the respondent to foreclose the mortgage, he placed it, together with the abstract of title furnished him by the mortgagor at the time of the execution of the mortgage, in the hands of his attorneys, Merritt, Oswald and Merritt of Spokane, instructing them to commence and prosecute foreclosure proceedings looking to a sale of the land to satisfy the mortgage indebtedness.

With a view of ascertaining the names of all persons acquiring an interest in the land after the execution of the mortgage, to the end that such persons might be made defendants in the foreclosure proceedings; and also with a view of ascertaining the amount of all tax and assessment liens attaching to the land after the execution of the mortgage, to the end that such liens might be paid by respondent and the amount thereof included in the amount he would be entitled to claim as a part of the secured indebtedness; his attorneys, on May 11, 1915, sent the abstract by mail to appellant, accompanied by their letter reading as follows:

Fidelity Abstract & Title Co., Inc.,
       Sunnyside, Washington.
    Gentlemen: Enclosed please find abstract covering a portion of the Northeast quarter (NE¼) of Section Eleven (11), Township Ten (10) North, Range Twenty-two (22), E. W. M., your county.
    Please continue this abstract to date and return it to us, together with statement of your charges, for which we will immediately forward our check.        Yours very truly,
              MERRITT, OSWALD & MERRITT.

On May 13, 1915, appellant having, as it claims, correctly continued the abstract to that date, returned it by mail to the attorneys, accompanied by their bill charging the attorneys $15.50 for the continuation of the abstract, which charge the attorneys paid. Among other statements in the abstract, over the signature and corporate seal of appellant, touching the condition of the title to the land, there was the following:

"The above described property is within the Outlook Irrigation District, the 1914 assessment is paid in full."

At that time about one-half of the land covered by the mortgage was in fact, subject to a lien for the Outlook Irrigation District Assessment of 1914, which lien was then in the form of a certificate of delinquency, which had been issued by the county treasurer to one Page, who had become the purchaser thereof in the manner provided by law. In this manner only had the county treasurer, for the irrigation district, received the amount of the assessment; which did not discharge the lien of the assessment upon the land, but only resulted in such lien being transferred to and held by Page instead of by the irrigation district; all of which appeared upon the records in the office of the county treasurer, though the certificate of delinquency issued to Page seems not to have been filed in the office of the county auditor as contemplated by §§ 6442 and 6443, Rem. Code.

Appellant was not advised of the fact that the attorneys were procuring the continuation of the abstract for anyone other than themselves, and did not know until some time thereafter that the attorneys were acting in respondent's behalf in procuring and paying for the continuation of the abstract. Soon after the return of the abstract to them, the attorneys commenced foreclosure proceedings upon the mortgage, in the superior court for Yakima county, and relying upon the statement made in the abstract that the 1914 irrigation assessment was paid, gave no further thought to the lien of that assessment or to the possibility of there being an outstanding delinquent certificate therefor. Respondent became the purchaser of the whole of the land in satisfaction of his mortgage at the execution

sale thereof, made in pursuance of the foreclosure decree.

In the meantime, there having been no redemption of the irrigation assessment delinquency certificate issued to Page, a county treasurer's deed was duly issued conveying to him the portion of the mortgaged land which was subject to the lien of that assessment, such portion being about one-half of the mortgaged land. Respondent and his attorneys, at all times relying upon the statement made in the abstract that the 1914 assessment was paid, remained wholly without knowledge of the fact that the delinquency certificate therefore was issued by the county treasurer to Page, until long after the continuing of the abstract by appellant and the issuance of the treasurer's deed upon the delinquency certificate; and by reason of the want of such knowledge, respondent lost the opportunity to redeem the certificate of delinquency.

In August, 1916, Page commenced an action in the superior court for Yakima county seeking a decree quieting his title as against respondent, to the portion of the land covered by his delinquency certificate and deed issued to him by the county treasurer. Respondent appeared and defended in that action, but was unsuccessful, a trial upon the merits resulting in a decree quieting title in Page to the portion of the land covered by the treasurer's certificate of delinquency and deed; the court holding, in effect, that the treasurer's deed issued upon the unredeemed certificate of delinquency, created in Page title to the portion of the land covered thereby superior to the claim of lien and title made by respondent by virtue of his mortgage and the foreclosure thereof. Respondent did not notify appellant of the pendency of that action to quiet title, but it is not claimed that respondent did not, in good faith, do all

that was legally possible to be done looking to the defeating of the claim of title made by Page under his certificate of delinquency and treasurer's deed.

At the close of the evidence during the trial of that action to quiet title, and before the final submission of the cause for final decision, Page offered to release to respondent all of his interest in the land upon the payment to him of $450, which offer respondent declined to accept. The fact of the making of this offer by Page to respondent was not communicated to appellant so as to give it an opportunity to pay the $450 to Page and save respondent from the loss of the portion of the land covered by the delinquency certificate and treasurer's deed. We think, however, that the record clearly warrants the conclusion that appellant would have then declined to pay the $450 to Page looking to the saving of the land to respondent; indeed appellant does not now claim that it would have done so, had it been given the opportunity.

It is first contended in behalf of appellant that it is in no event liable to respondent for the loss of the portion of the mortgaged land covered by the certificate of delinquency and the deed issued to Page by the county treasurer, because there was no privity of contract between it and the respondent placing upon it any contractual duty to respondent in the continuation of the abstract. The argument is that appellant's contractual duty was only to the attorneys, since it had no notice of the fact that the attorneys were acting for anyone other than themselves in their requesting appellant to continue the abstract, and in their paying appellant therefor. Counsel invoke the general rule stated by Judge Crow speaking for the court in *Bremerton Development Co. v. Title Trust Co.*, 67 Wash. 268, 121 Pac. 69, as follows:

"An abstracter's liability for damages arising from negligence or want of care in making an examination of records and in preparing an abstract of title is contractual. The weight of authority is that such liability extends only to the person by whom the abstracter was employed. There must be a contract or privity of contract to create liability, as it does not originate in tort. 1 Cyc. 215; *Thomas v. Guarantee Title & Trust Co.*, 81 Ohio St. 432, 91 N. E. 183, 26 L. R. A. (N. S.) 1210."

This, it may be conceded, is a correct statement of the law on that subject; though in that case it was decided as a disputed question of fact that the mistake in question occurred in the continuation of the abstract made for the plaintiff, rather than in the previously prepared portion of the abstract made for other persons as was contended; and the plaintiff was awarded recovery of damages resulting to him from the defendant's mistake in making the continuation of the abstract.

This general rule was also recognized in *Anderson v. Spriestersbach*, 69 Wash. 393, 125 Pac. 166, 42 L. R. A. (N. S.) 176. In that case, there was involved the preparation and delivery of an abstract by the defendant to a prospective purchaser of the land in question, at the request of the owner. Holding the defendant liable for damages resulting to the purchaser to whom the abstract was delivered, and recognizing the general rule to be as stated in the *Bremerton Development Co.* case, *supra*, Judge Chadwick, speaking for the court, said:

"This rule is sustained by the weight, considered in numbers, of authority; but we are not willing to apply it, unless it is plain that there was no duty on the part of the abstracter to the party injured. In this case the abstracter not only knew the purpose of the abstract, but became the agent of the other party to the

transaction, out of which the loss resulted, to deliver it to defendant. He knew that the trade, if made at all, would be made upon the faith of his certificate.''

In *Equitable Bldg. & Loan Ass'n v. Bank of Commerce & T. Co.,* 118 Tenn. 678, 102 S. W. 901, 12 L. R. A. (N. S.) 449, and in the note appended to the decision found in the last citation, will be found reference to decisions of the courts which are in harmony with the views expressed in our *Anderson* case. In *Young v. Lohr,* 118 Iowa 624, 92 N. W. 684, we have a case of undisclosed principal which seems to us so directly in point as to be decisive of our present inquiry, in favor of respondent. In that case, there was involved the procuring of an abstract by loan agents of the owner of the land, looking to the procuring of a loan and the satisfaction of an existing mortgage and other liens upon the land. Holding that the abstracter was liable to the owner of the land, who was the undisclosed principal of the agent, Judge Sherwin, speaking for the court, said:

''There was evidence showing that Walters & Wadsworth were acting as the agents of plaintiff in procuring an extension of the abstract. It is true that their agency may not have been disclosed by their action or by the nature of the transaction, but such disclosure was not necessary to create liability on the part of the defendant. If the agency in fact existed, the abstract was furnished for the plaintiff, and he was liable to the defendant for the service rendered, whether the defendant knew him as a principal or not. Being liable for this service, he is entitled to reciprocal rights against the defendant, and may maintain this action, subject to any defense which the defendants might have interposed against the agents. Mechem on Agency, section 769, and cases cited thereunder; 1 Am. & Eng. Enc. Law (2d ed.) 1168.''

We conclude that there was such privity of contract between appellant and respondent in this case as to

render appellant liable to respondent for such damages as he may have suffered by reason of the untrue statement made in the continuation of the abstract as to the payment of the 1914 irrigation assessment lien.

It is next contended that the statement in the abstract that "the above described property is within the Outlook Irrigation District, the 1914 assessment is paid in full" was true. We do not think so, in so far as the payment of the assessment is concerned. This contention, it seems to us, has no other foundation to rest upon than the fact that the county treasurer received for the irrigation district the amount of the 1914 assessment. He did not, however, receive that amount in payment or satisfaction of the assessment lien, but only as the purchase price of the lien which was thereupon by him transferred to Page by the issuing to Page of a delinquent assessment certificate therefor, all of which appeared of record in the office of the county treasurer at the time of the appellant's continuation of the abstract. This, we think, did not warrant making the unqualified statement that the assessment was "paid in full"; which statement, we think, could convey to one examining the abstract no other thought than that the assessment lien against the land had been fully satisfied and ceased to exist. Such statement in the abstract, we think, fully warranted respondent and his attorneys in so believing and acting accordingly, as they manifestly did.

Some contention is made in this connection, in appellant's behalf, rested upon the fact that the delinquency certificate issued to Page was not filed in the office of the auditor of Yakima county, as contemplated by §§ 6442 and 6443, Rem. Code. The argument seems to be that, had the certificate of delinquency been filed in the auditor's office, it would have appeared upon

the abstract as an instrument of record in that office affecting the title to the portion of the mortgaged land it covered, and respondent thereby advised of that fact, and thus rendered the statement made in the abstract that the assessment was paid, as meaning paid by the sale of the certificate of delinquency. But the fact that the certificate was not recorded in the auditor's office manifestly did not destroy nor satisfy the lien of the irrigation assessment. The failure of such a record in the auditor's office seems to us to argue that there was even greater necessity of there being a true statement of the condition and ownership of that assessment lien, as shown upon the records of the county treasurer, rather than an unqualified statement that such assessment was "paid in full." We conclude that the statement made in the abstract that the assessment was "paid in full" was not true; and that respondent and his attorneys were induced thereby to proceed upon the assumption that the assessment lien had been fully satisfied.

It is next contended that the trial court erred, in that it awarded damages to respondent in an excessive amount. This contention involves largely questions of fact as to the value of the respective portions of the mortgaged land. We are quite convinced that the evidence does not preponderate against the trial court's findings as to the values of the respective portions of the land by which it measured respondent's recovery.

It is further contended in this connection that respondent did not do his full duty looking to the mitigation of the damages which he suffered. This seems to be rested upon the fact that, at the close of the evidence, and before the final submission of the case to the court, in the action by Page to quiet title in the land as against respondent, Page offered to release all his

interest in the land to respondent upon the payment
of $450. The argument seems to be that, had respond-
ent paid to Page this $450 in pursuance of that offer,
that would have been the extent of his damages;
whereas the final result of that action was that he
suffered damages in more than twice that amount. If
Page had offered to release the whole of his interest
in the land for a trifling sum, it might be that respond-
ent's duty to mitigate his damages would have been
such as to call for him paying such trifling sum and
thus limit his damages accordingly; but we think
that, plainly, respondent was not obliged to pay the
large sum of $450 to effect a compromise of that action
and in that manner mitigate his damages. 8 R. C. L.
443-445.

It is further contended in this connection, that res-
pondent should have notified appellant of the offer of
compromise made by Page, to the end that it could have
made payment of $450 to Page and thus save respond-
ent from all damages. The trouble with this conten-
tion is that the record renders it all but conclusive
that, had such offer on the part of Page been communi-
cated by respondent to appellant, it would have unhesi-
tatingly refused to make such payment. Indeed,
there is now no claim made in behalf of appellant that
it would have made such payment to Page for the re-
lease of all his interest in the land to respondent. It
is not contended in behalf of appellant that it was en-
titled, as a matter of right, to notice of the commence-
ment and pendency of the action by Page to quiet title
as against respondent, nor is it contended in appel-
lant's behalf that respondent did not, in his defense of
that action, do all that was legally possible looking to
the defeating of Page's claim of title to the portion of
the land covered by the certificate of delinquency and

deed issued by the county treasurer. We conclude, therefore, that appellant has not been in the least prejudiced by its want of notice of the pendency of that action to quiet title, or by its want of notice of Page's offer to release all his interest in the land upon the payment of $450.

Contention is finally made in appellant's behalf that the trial court erred in awarding to respondent, together with his other damages, an item of $125 attorney's fees expended by him in the defense of Page's action to quiet title. That respondent was fully warranted in making defense in that action, and in so doing incurring attorney's fees in that amount, we think is quite plain in view of the fairly disputable questions involved in that case. It follows that he was entitled to recover in this case as part of his damages, attorney's fees in a reasonable amount so expended by him in his defense of that action. *Curtley v. Security Savings Society,* 46 Wash. 50, 89 Pac. 180; 17 C. J. 809.

The judgment of the trial court is affirmed.

HOLCOMB, C. J., FULLERTON, BRIDGES, and MACKINTOSH, JJ., concur.